IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

DONNER V. DINSLAGE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ERIC M. DONNER, APPELLEE,

V.

KASSANDRA L. DINSLAGE, APPELLANT.

Filed May 21, 2024.    No. A-23-812.

Appeal from the District Court for Platte County: JASON M. BERGEVIN, Judge. Affirmed.

Kathleen Koenig Rockey, of Copple, Rockey, Schlecht, & Mason P.C., L.L.O., for appellant.

Frederick T. Bartell, of Fitzgerald, Vetter, Temple, Bartell & Henderson for appellee.

MOORE, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

INTRODUCTION

Kassandra L. Dinslage appeals from an order of the district court for Platte County, which order determined paternity, custody, parenting time, and child support for Kassandra and Eric M. Donner's daughter, Eryn. The court ordered that the parties have joint legal and physical custody of Eryn, but granted final decisionmaking authority to Eric with respect to where Eryn attends school. On appeal, Kassandra does not challenge the district court's decision as to custody, but does challenge the court's decision to grant Eric final decisionmaking authority as to where Eryn should attend school if the parties cannot otherwise agree. For the reasons set forth herein, we affirm the district court's decision.

- 1 -

BACKGROUND

Kassandra and Eric were in a romantic relationship from 2013 through the spring of 2022. While they never married, they did have one child together, Eryn, born in October 2014. During the relationship, they lived together in a home located in Humphrey, Nebraska. Kassandra's son from a previous relationship, Carter, also lived in the home. When the relationship ended, Kassandra and Carter moved in with Kassandra's parents who lived 20 minutes away from Humphrey, in Clarkson, Nebraska.

In May 2022, Eric filed a complaint for establishment of paternity, custody, and support. In the complaint, he requested that he be awarded sole physical and legal custody of Eryn and that Kassandra be required to pay child support. Kassandra filed an answer and counterclaim, requesting that she be awarded sole physical and legal custody of Eryn and that Eric be required to pay child support.

Shortly after the parties filed their pleadings, they filed with the district court a stipulation indicating that they had agreed to a temporary parenting plan pending trial. In the stipulation, Kassandra and Eric agreed to share joint physical custody of Eryn such that they each had alternating weeks of parenting time. Kassandra and Eric also agreed to share joint legal custody; "[h]owever, after discussion and thoughtful consideration, in the event of an impasse or disagreement, [Eric's] decisions shall control." They agreed that neither of them would pay child support. The district court accepted the stipulation, and the provisions therein structured their parenting of Eryn during the pendency of the lower court proceedings.

Trial began on May 17, 2023, and concluded on August 22. We focus our recitation of the evidence presented at trial on facts that are relevant to the district court's decision regarding the award of joint legal custody, subject to Eric's final decisionmaking authority as to Eryn's school, as that is the only issue raised in this appeal.

At the time of trial, Eric was 39 years old and was living in Humphrey. Since August 2022, he has worked for the State of Nebraska Department of Transportation. His hours are 6 a.m. to 4:30 p.m. from May to September and 7:30 a.m. to 4 p.m. from September to April. Eric's mother, who lives nearby, helps care for Eryn when he has to be at work before or after school.

At the time of Eric's testimony in May 2023, Eryn was 8 years old and finishing second grade at Humphrey Public School, where she had attended since she was in preschool. Eric's home is across the street from the school. Eric testified that Eryn was doing "amazing" at school, performing above grade level in both reading and math. Eryn has many friends at school and has enjoyed being involved in dance, softball, and religious education classes. Eric is involved in Eryn's school, volunteering to chaperone her field trips, attending parent-teacher conferences, and helping Eryn with her homework. Eric testified that he wants Eryn to continue to attend school in Humphrey: "Why would [you] want to uproot her from everything she's ever known[?]".

Eric also testified regarding his perceptions of the breakdown in his relationship with Kassandra and their current ability to communicate. Eric testified that in August 2021, Kassandra began attending nursing school in Lincoln. While he supported her education, her schooling took her away from their home and away from Eryn and Carter during the week. Eric stayed in Humphrey with the children. Eric became frustrated when Kassandra returned home on the weekends, but did not spend much time with the children, instead, working part-time, doing

homework, sleeping, or staying with her mother in Clarkson. Eric believed that Kassandra was distancing herself from him and did not communicate with him, even if he contacted her about the children. When he asked her about attending relationship counseling, she stated that she was too busy. Eric believed that the turning points that ended the relationship included his sending Carter to live with Kassandra's mother in March 2022 because Carter would not listen to him and Kassandra's failure to tell him that she was not graduating from nursing school in May 2022 as she had planned.

Eric indicated that he has had a lot of issues communicating with Kassandra since their relationship ended. He believes that Kassandra fails to timely communicate with him about Eryn and that she does not respond to his requests for information or for discussions regarding decisions involving Eryn. Essentially, his perception was that Kassandra tried to make communications difficult. Eric believed that even though he had final decisionmaking authority during the pendency of the proceedings, Kassandra would make decisions regarding Eryn without his knowledge or involvement, including decisions about doctor's visits, extracurricular activities, and religious education. Ultimately, though, Eric expressed a desire to continue to try to communicate with Kassandra and a hope that they could work together for the best interests of Eryn. Eric asked the court to award him and Kassandra with joint legal custody of Eryn. However, he wished to retain final decisionmaking authority in the event of a disagreement or an impasse.

Eric also asked the district court to maintain the temporary joint physical custody arrangement, awarding him and Kassandra with alternating weeks of parenting time. Eric testified that Eryn likes the current custodial arrangement and that he believed such arrangement to be in her best interests. Eric emphasized that Eryn needed to have both her mother and her father involved in her daily life.

On August 22, 2023, Kassandra testified. At the time of her testimony, she was still living in Clarkson with her parents and with Carter, who was 18 years old and beginning his junior year in high school. Carter suffers from spina bifida, which affects his mobility. Eryn resides with Kassandra, Carter, and her grandparents every other week during Kassandra's parenting time. Eryn has her own room at her grandparents' home.

Kassandra graduated from nursing school in Lincoln in September 2022. She passed her boards in May 2023. Kassandra testified that while she was in school in Lincoln, she spoke to Eryn and Carter every night and returned home every weekend. While at home, Kassandra would do all the laundry and prepare meals for the week ahead. She also worked part-time as a certified nursing assistant to assist with the family's finances. Kassandra did explain that when Eric moved Carter in with her parents in March 2022, she began to stay in Clarkson with Carter when she returned home from school on the weekends.

Kassandra has been employed at a long-term care facility in Columbus, Nebraska, since August 2022. She is currently working as a licensed practical nurse. She works three 12-hour shifts per week, from 6 p.m. to 6 a.m. and every third weekend. Kassandra leaves for work at about 5:05 p.m. in order to arrive on time. She arrives home from work about 7:15 a.m., after driving for 45 minutes between Columbus and Clarkson. When Kassandra works an overnight shift, her mother watches Eryn and Carter. On the weeks that Eryn is in her home, Kassandra is able to drive her to school in Humphrey by 8 a.m. That drive takes approximately 20 minutes.

At the time of Kassandra's testimony, Eryn was about to begin third grade. Kassandra testified that even though Eryn had always been enrolled in school in Humphrey, Kassandra wanted to transfer her to Clarkson schools. Carter attends school in Clarkson and Kassandra attended that same school when she was younger. Kassandra indicated that she has no major objections to Eryn's school in Humphrey. She acknowledged that Eryn liked her school, that she earns good grades, and that she has good friends there. However, Kassandra did not think that Eryn switching schools to attend Clarkson would be difficult, since Eryn already knew some of the other children who attend that school and since Carter attends school there as well. Kassandra also testified that Eryn switching to the school in Clarkson "would also work better with [her] current work schedule."

During her testimony, Kassandra requested that she be awarded primary physical custody of Eryn. She suggested that Eric be awarded parenting time every other weekend during the school year and every other week during the summer. Kassandra was willing to share joint legal custody of Eryn with Eric, but wanted final decisionmaking authority if she and Eric could not reach an agreement.

Kassandra testified that she has found it difficult to communicate with Eric since their relationship ended. While she tries to be civil with Eric for the sake of Eryn, Kassandra did not believe that Eric made communication easy. As an example of their communication struggles, Kassandra testified at length about the trouble she and Eric had agreeing on where to enroll Eryn in activities during the past year. Kassandra also explained that part of their communication difficulties stemmed from Eric's treatment of her during their relationship, including calling her derogatory names, controlling her, and not giving her any privacy in their home. Kassandra also did not believe that Eric was always appropriate with Carter. However, Kassandra did testify that Eric is a good dad to Eryn.

On September 21, 2023, the district court entered its final order. In the order, the court found that Eric is Eryn's biological father, noting that he had signed an acknowledgement of paternity and that he was listed as Eryn's father on her birth certificate. The court awarded the parties with joint physical custody of Eryn such that they each had alternating weeks of parenting time, just as the stipulated temporary order had provided. The court awarded the parties with joint legal custody of Eryn. However, the court indicated that "[i]n the event of a disagreement about where the minor child will attend school, [Eric]'s decision concerning this issue shall control." Neither party was ordered to pay child support.

Kassandra appeals from the district court's order here.

## ASSIGNMENT OF ERROR

In her brief on appeal, Kassandra assigns one error. She contends that the district court erred in awarding Eric final decisionmaking authority regarding where Eryn is to attend school.

## STANDARD OF REVIEW

In a filiation proceeding, questions concerning child custody determinations are reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. *Citta v. Facka*, 19 Neb. App. 736, 812 N.W.2d 917 (2012). In such de novo review, when the evidence is in conflict, the

appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## ANALYSIS

In its order, the district court awarded the parties with joint legal custody of Eryn, but indicated that "[i]n the event of a disagreement about where the minor child will attend school, [Eric]'s decision concerning this issue shall control." On appeal, Kassandra challenges the district court's decision to give Eric final decisionmaking authority as to Eryn's school. Specifically, she asserts that the court abused its discretion because Kassandra has a history of consulting Eric about fundamental decisions regarding Eryn, while Eric makes decisions without Kassandra's input. Kassandra also asserts that it would be in Eryn's best interests to let Kassandra choose her school because Kassandra would choose the public school in Clarkson, which is best for Eryn. Upon our de novo review of the record, we affirm the decision of the district court.

The best interests of the child are the primary consideration for developing custodial plans. *Blank v. Blank*, 303 Neb. 602, 930 N.W.2d 523 (2019). "Joint legal custody" is the mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health. *Id*. This means that both parties should work cooperatively together in making such decisions. However, if the parties cannot come to an agreement on whether Eryn should attend school in Humphrey or in Clarkson, the district court gave Eric the final say. When considering the best interests of a child in developing custodial plans, it is a common occurrence and a court is permitted to supply a party with final decisionmaking authority in some areas to avoid future impasses which could negatively affect the child while maintaining both parents' rights to consultation and participation in important decisions. *Id*.

Upon our de novo review of the record, we cannot say that the district court abused its discretion in deciding to place final decisionmaking authority for Eryn's school in Eric. The parties' testimony at trial clearly indicates that they disagree about where Eryn should attend school and given their communication difficulties, such disagreement is unlikely to be resolved without someone having final decisionmaking authority. Eric wants Eryn to continue attending school in Humphrey where she is comfortable and performing at a high level. Kassandra wants Eryn to attend school in Clarkson, where Kassandra lives and where Carter attends school. Kassandra believed that changing Eryn's school would not be detrimental to Eryn and would be more convenient for Kassandra. By awarding Eric with final decisionmaking authority for where Eryn should attend school, the district court resolved the conflict between the parties and effectively decided that Eryn should remain at school in Humphrey. We cannot say that this decision was an abuse of discretion.

The evidence presented at trial revealed that Eryn is doing extremely well at her school in Humphrey, where she has attended since preschool. She is earning good grades and performing very well on standardized testing. In addition, she has developed a strong group of friends. Both Eric and Kassandra testified that Eryn is happy at her current school. Kassandra wishes to change Eryn's school so that Eryn can attend school with her older brother and so that school drop-offs and picks-up can be more convenient for Kassandra. Upon our de novo review of the record, we

do not find that Kassandra has demonstrated that changing Eryn's school would be in her best interests.

By attending school in Clarkson, rather than in Humphrey, Eryn could go to school in the same building as her older brother, Carter. However, at the close of the trial, Eryn was about to begin third grade. Carter was about to begin his junior year in high school. Given Eryn and Carter's age difference, it would appear unlikely that they would have significant interaction during their school days. Moreover, Carter only has two more years at the Clarkson school before he will graduate. While Kassandra testified that it was important to her for the children to be in the same school, she also admitted that while the family lived together in Humphrey, Eryn attended the public school while Carter was enrolled in a parochial school. Kassandra explained why Carter was moved to the parochial school, but did not explain why she found it unnecessary to move Eryn as well. Other evidence indicated that Eryn and Carter have had some difficulties in their relationship over the years. Such difficulties have been caused at least in part by mental health challenges experienced by Carter and his struggle to adjust to the new family dynamics following Eryn's birth. Essentially, we find that Carter's presence at the Clarkson school is not sufficient to warrant a change in her schools.

Kassandra also wished to change Eryn's school to Clarkson so that it would be easier for Kassandra's daily schedule. Currently, Kassandra is having to drive 20 minutes between Humphrey and Clarkson to drop off and pick up Eryn from school. Kassandra finds this particularly difficult given that she works overnight shifts in Columbus three nights per week and must drive 45 minutes home in the mornings prior to driving Eryn to school. In essence, Kassandra testified to a preference that the court inconvenience Eric rather than her with respect to pick-up and delivery to school. The district court's decision focuses on Eryn's best interests. Kassandra provided no compelling reason why Eryn should be removed from the school she has always attended and in which she is thriving. While Eryn may be able to adjust to the school in Clarkson, the district court saw no reason to test Kassandra's hypothesis. We agree with the finding of the district court. While we recognize that Kassandra's distance from the Humphrey school poses some level of difficulty, we cannot say that Eryn's best interests would be served by uprooting her from her school in Humphrey for Kassandra's convenience.

Based upon our de novo review of the record, we simply cannot find that the district court abused its discretion in awarding Eric with final decisionmaking authority regarding where Eryn should attend school. The parties clearly disagreed on this topic and Eric's decision to continue to send Eryn to her school in Humphrey is in her best interests.

CONCLUSION

We find no abuse of discretion in the district court's decision to award Eric final decisionmaking authority as to where Eryn was to attend school. As a result, we affirm.

AFFIRMED.